## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 19 2019, 9:58 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Lewis,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | March 19, 2019<br><br>Court of Appeals Case No.<br>18A-CR-2454<br><br>Appeal from the Henry Circuit Court<br><br>The Honorable Bob A. Witham, Judge<br><br>Trial Court Cause No.<br>33C01-1612-F1-3 |

**Brown, Judge.**

[1] Michael Lewis appeals his sentence for two counts of child molesting. Lewis raises one issue which we revise and restate as whether his sentence is inappropriate in light of the nature of the offenses and his character. We affirm.

*Facts and Procedural History*

[2] Between October 1, 2015, and October 31, 2016, Lewis, born on Novemember 13, 1971, knowingly performed sexual conduct by licking the vagina of K.D., who was born on December 17, 2007, and was his stepson's daughter. During the same period, he knowingly performed fondling or touching of K.D. when she was eight years old with the intent to arouse or satisfy his sexual desires.

[3] On December 5, 2016, the State charged Lewis with six counts under Ind. Code § 35-42-4-3,[1] namely: Count I, child molesting as a a level 1 felony; Count II, child molesting as a level 1 felony; Count III, child molesting as a level 4 felony; Count IV, child molesting as a level 1 felony; Count V, child molesting as a level 1 felony; and Count VI child molesting as a level 4 felony. On July 19, 2018, Lewis and the State entered into a plea agreement pursuant to which

---

[1] Ind. Code § 35-42-4-3(a) provides in relevant part that a "person who, with a child under fourteen (14) years of age, knowingly or intentionally performs or submits to sexual intercourse or other sexual conduct . . . commits child molesting," a "Level 1 felony if . . . it is committed by a person at least twenty-one (21) years of age." Ind. Code § 35-42-4-3(b) provides in part that a "person who, with a child under fourteen (14) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting, a level 4 felony."

he agreed to pled guilty to Counts II and III,[2] with sentencing to be determined by the court.

[4]     At the sentencing hearing on September 11, 2018, Lewis stated, "I have to go pay for what I have done and I am going to." *Id.* at 17. K.D.'s father testified that K.D. was born on December 17, 2007, and answered affirmatively when asked whether, "when these things happened," they occurred at Lewis's residence while Lewis and K.D.'s grandmother had "care and custody and control" of her and were "looking after her and those things." *Id.* at 18. He answered affirmatively when asked whether, after she disclosed what Lewis had been doing, she went to counseling or saw a counselor or a therapist and indicated that she was still doing that. When asked to describe what effect "all of this" had on K.D., he stated:

> She has built up [a] barrier. She has a hard time getting close to people now. As far as mine and her relationship it's kind of hard for both of us. As a father you are supposed to protect her and I failed. Someone that we thought we could trust and still to this day I struggle with that bond. I can't get the strength to talk to her.

---

[2] On August 9, 2018, the court issued an order granting the State's motion to amend information that it had filed the same day. Count II, which originally charged that Lewis "did knowingly perform other sexual conduct with K.D. . . . by inserting his finger in K.D.'s vagina," was amended to state that Lewis "did knowingly perform other sexual conduct with K.D. . . . by licking K.D.'s vagina." Appellant's Appendix Volume II at 16, 68. At the September 11, 2018 hearing, the court asked Lewis's counsel whether he had a chance to review the amended information with Lewis, and counsel indicated that they had reviewed it in person and had no objection.

*Id.* at 19. He indicated that he had been "pretty adamant on 36 years" in response to being asked whether he had given any thought as to what type of sentence he would like Lewis to have. *Id.*

[5] The PSI states, in the official version of the present offense section, "See Charging Information and Affidavit for probable cause." Appellant's Appendix Volume 2 at 81. An affidavit for probable cause submitted on December 5, 2016, states that K.D.'s grandmother, who was Lewis's wife and had guardianship over K.D. and her sister, H.D., advised that she needed to make a report regarding K.D., that K.D. had been been going to counseling, and that K.D. "had told her that her Papaw, [Lewis], touched her in her vaginal area." *Id.* at 21. The affidavit indicates that Amanda Wilson, Director of the JACY House, conducted a forensic interview of K.D. It states that K.D. disclosed that:

> [K.D.'s grandmother,] H.D., and K.D. live together. K.D. said she visits her father . . . almost every day . . . .
>
> K.D. said she had been touched in "not ok" places before. She further said "the front one by Papaw." K.D. said Papaw was putting his fingers there (indicating the vagina on the illustration on the board) and he licked it and wouldn't quit, so she kept rolling away and she almost fell off of the bed and he (Papaw) wouldn't quit. . . .
>
> K.D. identified "Papaw" [as Lewis]. K.D. said this has happened more than once, she stated it had occurred at Papaw's house . . . .
>
> K.D. said one time when [K.D.'s grandmother] was at home she was sleeping in Papaw's room and she kept rolling away because

he kept on touching her in "the bad spot." He kept on touching her with his finger and she kept rolling away and rolled off of the bed "and he still wouldn't leave me alone." K.D. was getting up to go get water and she layed [sic] on the floor. . . .

*Id.* at 22-23.

[6] The affidavit indicates that Lewis was interviewed on December 2, 2016, that he initially denied any wrongdoing or inappropriate touching of any type "for a lengthy period of time in the interview," and that at some point in the interview Lewis "stated that he was going to be honest and tell . . . what had happened." *Id.* at 25. It states that Lewis "began by saying 'it started as a game'," described throughout the interview "K.D. as being the initiator of the sexual activity and claimed it was about her, and not himself," and confessed that "on several occasions there were sexual and inappropriate contact which he estimated to be more than 5 times, and less than 10 times." *Id.* It further states:

Lewis said that he was never the aggressor. He explained the "game" he claimed that he and K.D. played in the bed. . . . Lewis said he wasn't a sick pedophile type of guy, and it got out of hand. Lewis admits to touching her "clit." . . . .

Lewis said he believes that K.D. enjoyed this and that is why it had happened after the first time. Lewis said "because she enjoyed it."

*Id.* at 25-26.

[7] The trial court found that Lewis was in positions of trust and of having care, custody, and control of K.D. After finding that K.D. was eight or nine when

the offenses occurred, the court indicated that it could "give that a little bit extra of an aggravator factor in this case." Transcript Volume II at 27. It found that Lewis had a prior criminal history and that he accepted responsibility for the commission of the offenses in this case and expressed remorse. At some point, the court further noted that it "was struck" by Lewis's earlier comment that he had to pay for what he had done, and stated:

> The problem is trying to come up with a payment for that. I don't that [sic] there is any payment that you can make for the damages that have been caused in this case to everyone involved. Not just to the victim K.D., to her dad, her family, your family, everyone is paying a price for this — the actions that you have admitted to today that you have done.

*Id.* at 28. The court sentenced Lewis to forty-five years for his conviction of child molesting as a level 1 felony and ten years for his conviction of child molesting as a level 4 felony and ordered the sentences to be served consecutively.

### Discussion

[8] The issue is whether Lewis's sentence is inappropriate in light of the nature of the offenses and his character. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[9] Lewis argues that a fifty-five year executed sentence in prison is a *de facto* life sentence and points in support to his age and "reduced life expectancy due to having Hepatitis C." Appellant's Brief at 9. Regarding the nature of the offenses, he acknowledges that the crimes he committed were heinous and that he betrayed the trust of his family members by "violating his young granddaughter," but contends that he did not "beat, wound, or otherwise severely brutalize the victim beyond that which was inherent in the commission of the crimes" and that K.D. did not suffer "particularly aggravated brutality" at his hands. *Id.* at 7-8. Regarding his character, he contends that he saved the State time and the expense of having to go to trial, relieved K.D. of testifying in court, and expressed remorse for his actions; asserts that he did not receive a substantial benefit from his guilty plea "considering he received a *de facto* life sentence"; and points to the request of K.D.'s father that his term be thirty-six years. *Id.* at 9. He further argues that his prior criminal history was related to a serious drug and alcohol addiction that began when he was young.

[10] Our review of the nature of the offenses reveals that, when she was eight or nine years old and in his care, custody, and control, Lewis licked the vagina of K.D., the daughter of his stepson, and fondled or touched her with the intent to arouse or satisfy his own sexual desires. Lewis indicated during his December 2, 2016 interview that sexual and inappropriate contact with K.D. occurred on several occasions, which he estimated to be more than five times, and less than ten times. K.D.'s depiction of the offenses from her forensic interview includes descriptions of Lewis's actions and her efforts to stop him.

[11] As for his character, Lewis characterized the offenses as a game, contended that the molesting continued because K.D. enjoyed it, denied being the aggressor, and blamed K.D. for being the initiator. He pled guilty to Counts II and III nineteen months after being charged, and the State dismissed three counts of child molesting as level 1 felonies and one count of child molesting as a level 4 felony. To the extent that Lewis asserts that he received a *de facto* life sentence, we observe that his combined sentence is nevertheless a term of years and is not considered a life sentence even if it were to exceed his expected life span. *See Anthony v. State*, 56 N.E.3d 705, 717 (Ind. Ct. App. 2016) (noting defendant's argument that he was twenty years old when he committed the offenses and finding that, even though his combined sentence of 298 years exceeded his expected life span, his sentence was nevertheless a term of years), *trans. denied*. The PSI indicates that Lewis has a prior criminal history consisting of two felony and two misdemeanor convictions, two of which occurred as recently as 2013. According to the PSI, Lewis started regularly using alcohol at the age of fourteen, and he reported drinking every day up until his arrest and that he would usually drink a twelve-pack of beer a day on the weeknights and drink whiskey on the weekends. The PSI indicates that he admitted to using methamphetamine and heroin in the past; started to use methamphetamine at the age of nineteen and would use it every day "up until several years ago"; started using heroin at the age of nineteen; and reported he had not used any illegal substances "until a couple of years ago" and that he has never had treatment. Appellant's Appendix Volume II at 83. The PSI states that Lewis reported his "physical health was ok, although he does have Hepatitis C" and that "he has had the Hepatitis for a

while, it just took it [sic] 12 to 13 years to tell him about it." *Id.* The PSI also indicates that Lewis's overall risk assessment score using the Indiana risk assessment system placed him in the high risk to reoffend category.

[12] After due consideration, we conclude that Lewis has not sustained his burden of establishing that his aggregate sentence is inappropriate in light of the nature of the offenses and his character.

[13] For the foregoing reasons, we affirm Lewis's sentence.

[14] Affirmed.

Bailey, J., and Bradford, J., concur.